785 So.2d 1121 (2001)
Roger SIMPSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-CP-00430-COA.
Court of Appeals of Mississippi.
May 29, 2001.
*1122 Roger Simpson, Appellant pro se.
Office of the Attorney General by Deirdre McCrory, for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and LEE, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Due to a violation of probation, Roger Simpson's suspended sentence was revoked and his original sentence reinstated by the Circuit Court of Tallahatchie County. Simpson's subsequent motion for post conviction relief was dismissed by the court. On appeal Simpson argues that his probationary period was in violation of statute and that his trial counsel was ineffective. We agree that his probation of ten years violated the statutory maximum of five years. We therefore imply a five year probationary period. We further find that since the process to revoke probation was not commenced within the five year probationary period, the lower court could not properly revoke Simpson's suspended sentence. We reverse and enter judgment for Simpson.

FACTS
¶ 2. On September 4, 1990, Roger Simpson pled guilty in the Circuit Court of Tallahatchie County, to two counts of burglary and was sentenced to consecutive ten year terms. The court ordered that the sentence be suspended upon Simpson's successful completion of the regimented inmate discipline program. Simpson completed the program. On March 18, 1991, further execution of his sentence was suspended and he was placed on supervised probation for a term of ten years. Simpson was required among other things to meet with his probation officer as directed and pay all supervision fees. Simpson acknowledged in writing that he understood these obligations.
¶ 3. On August 7, 1995, Simpson's probation officer, Clay Barker, filed a violation report against Simpson alleging that he had avoided supervision since May of 1994 and that he had failed to pay supervision fees and costs as directed by the court. That same day officer Barker completed and signed a warrant authorizing Simpson's arrest. No arrest occurred at that time.
¶ 4. Approximately two years later Simpson was arrested and then indicted on burglary charges. Following this arrest, on July 11, 1997, the State filed a petition to revoke Simpson's suspended sentence. The State alleged that Simpson had failed to meet with his probation officer, failed to pay supervision fees, and failed to pay costs as required. On August 8, 1997, a revocation hearing was held in Tallahatchie County Circuit Court. The court found that Simpson had violated the terms of his probation and revoked his suspended sentence. Simpson then filed a motion to vacate this judgment. The court dismissed without a hearing. This appeal followed.

DISCUSSION

I. Revocation of suspended sentence
¶ 5. The post conviction relief that Simpson seeks is based on the fact that the March 18, 1991 order that suspended his sentence and placed him on supervised probation stated that he would be "under the supervision of the Mississippi Department of Corrections for ten years...." The statutory maximum for probation in 1991 and now is five years. Miss.Code.Ann. § 47-7-37 (Rev.2000). The probationary period was improper and in violation of statute.
¶ 6. The effect of the overly lengthy probationary period becomes the next *1123 question. Supreme Court precedents have implied a five year probation period when a sentencing order conveyed reasonably specific conditions of behavior but failed to list a specific probationary period. E.g., Tunstall v. State, 767 So.2d 167, 169 (Miss. 2000). For analytical purposes here, we interpret an erroneously long probation sentence to have the same effect. See Buice v. State, 751 So.2d 1171, 1774, 1175 (Miss.Ct.App.1999) (Southwick, J., concurring) (a nine-year probation period should be reformed to the five year maximum). Other approaches such as to declare probation or the sentence invalid and to remand for re-sentencing even though the potential probation period has expired, are in this case a waste of judicial resources. That is because even if the trial judge then reformed the probation to the longest possible period of five years, we would then still need to reverse after the new sentence because of the next issue that we discuss. Other remedies for the invalid length of probation therefore need not be considered in this case.
¶ 7. Since Simpson at most could have been placed on probation for five years, we examine the revocation as if Simpson had been given that length of probation. Simpson's remaining pro se argument is only that his counsel was ineffective for not having objected to the improperly long probation period. However, since we hold that the probation is by force of law capped at five years, the failure of trial counsel to raise the point has caused him no harm. Unless Simpson suffered prejudice, he cannot gain relief on the basis of ineffective counsel. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 8. We find instead that the central remaining issue is whether the revocation was timely pursued. If it was not, then the lower court had no jurisdiction over Simpson for its August 8, 1997 order revoking probation. This issue was not raised in Simpson's brief. Generally we do not review an issue that is neither preserved in the lower court nor argued on appeal. However, "the court may at its option, notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). The error must have resulted in a manifest miscarriage of justice. Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). The revocation of a suspended sentence by a court which no longer had authority to do so would be such a manifest miscarriage. We recognize the issue as plain error.
¶ 9. The statute that sets five years as the maximum for probation also sets the procedure for revocation:
At any time during the period of probation the court, or judge in vacation, may issue a warrant for violating any of the conditions of probation or suspension of sentence and cause the probationer to be arrested. Any probation and parole officer may arrest a probationer without a warrant, or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the probationer has, in the judgment of the probation and parole officer, violated the conditions of probation.
Miss.Code Ann. § 47-7-37 (Rev.1993). The statute mentions two matters important herethat an arrest warrant may be issued and that this occur "during the period of probation...."
¶ 10. To understand whether those requirements were met, we note first that a probationary period begins to run on the day the convict is released on supervised probation following suspension of the original sentence. Moore v. State, 585 So.2d 738, 740 (Miss.1991). Simpson's sentence was suspended by order dated March 18, *1124 1991, and therefore his five year probation expired on March 18, 1996. The timeliness of revocation is governed by those dates.
¶ 11. There is no dispute that the violations claimed by the Statee.g., failure to report to his probationary officeroccurred prior to March 18, 1996. The question is whether the State had any obligations to act during that period beyond what it did here. The only pre-March 1996 acts were that the probation officer filed a violation report on August 7, 1995, alleging that Simpson had absconded supervision since May of 1994 and that he had failed to pay supervision fees and costs. That report was not submitted to the court but was given by the probation officer to the Department of Corrections Deputy Commissioner of Community Services. On that same day the probation officer deputized the sheriff to arrest Simpson, but no arrest was made for two years. The State did not file a petition to revoke the suspended sentence until August 8, 1997, which was seventeen months after the expiration of Simpson's five year probationary period.
¶ 12. The State argues that the August 1995 violation report and warrant were sufficient since probation would not expire for seven more months. Cited as precedential support for this position is Jackson v. State, 483 So.2d 1353 (Miss.1986). In Jackson, the court held that the State's filing a petition for revocation of probation with the court served to toll the period of probation, where it was filed eleven days prior to the running of the probationary period. Jackson, 483 So.2d at 1356. A petition to revoke Simpson's probation was not filed until over a year after probation expired. No court action was initiated prior to the end of the period. Thus Jackson is not controlling.
¶ 13. Much more in point is a case in which probation was revoked after the probationary period had expired; prior to expiration what appears to be the same form warrant as used against Simpson had been issued by a probation officer. Ellis v. State, 748 So.2d 130, 132 (Miss.1999). The court made a distinction between the phrase in section 47-7-37 that "during the period of probation the court, or judge in vacation, may issue a warrant for violating any of the conditions of probation or suspension of sentence and cause the probationer to be arrested," and the following sentence that permits a probation officer to deputize another officer to make an arrest. Referring to the latter authority, the court said that such an authorization to arrest is not an arrest warrant and does not toll the period for revocation. Had the authorization resulted in probationer's arrest "prior to the running of the five year term, that would have been sufficient to toll the running of the five year period in accord with Jackson v. State, 483 So.2d 1353 (Miss.1986)." Id. at 134.
¶ 14. We can find no distinction between what occurred in Ellis and the situation here. The trial court found that Simpson's probation could be revoked despite the delay beyond the end of probation because otherwise a probationer's successful eluding of authorities would cause the State's right to revoke probation to be lost. Factually, the record does not reveal that efforts to arrest Simpson on a probation violation were ever made. His arrest on a subsequent offense is what caused the State to initiate revocation proceedings. Legally, an elusive probationer can be held to account by a court's issuance of an arrest warrant prior to the end of probation. Ellis, 748 So.2d at 134.
¶ 15. The only action that the State argues preserved the right to revoke Simpson's probation was the officer's issuance *1125 of a "Warrant for Arrest on Violation of Probation." The Supreme Court has explicitly held that this is insufficient. We reverse the order dismissing post conviction relief and set aside the order of August 8, 1997, that had revoked the suspended sentence.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY DENYING POST CONVICTION RELIEF IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE TAXED TO TALLAHATCHIE COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.