# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00413-COA

**KEITH THAYER**                                                   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2020 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS JR. |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KEITH THAYER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/22/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., McDONALD AND McCARTY, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     The Pontotoc County Circuit Court revoked Keith Thayer's post-release supervision (PRS) and sentenced him to serve five years of a remaining twenty-year sentence in the custody of the Mississippi Department of Corrections (MDOC), with fifteen of those years suspended.  Thayer, proceeding pro se, filed a motion for post-conviction collateral relief (PCR) alleging that the circuit court erred in his sentencing, erred in denying his request for an attorney, and erred in revoking his PRS because he did not commit a felony.  The circuit court denied Thayer's PCR motion, and he now appeals.  Finding no error, we affirm the circuit court's ruling.

### Statement of the Facts and Procedural History

¶2.     On November 20, 2012, Thayer pled guilty to the crime of burglary of a dwelling pursuant to Mississippi Code Annotated section 97-17-23 (Supp. 2008) and the crime of simple assault on a law enforcement officer pursuant to Mississippi Code Annotated section 97-3-7 (Rev. 2006). For the burglary-of-a-dwelling crime, the Pontotoc County Circuit Court sentenced Thayer to twenty-five years, with twenty years suspended and five years to serve in the custody of the MDOC. The circuit court also sentenced Thayer to serve five years for his assault on a law enforcement officer to run concurrently with the burglary sentence. The circuit court ordered Thayer to be placed on PRS for five years after he was released from prison. The terms regarding Thayer's PRS conditions included (1) attending and completing any special programs or counseling directed by the court or field officer; (2) paying $420.50 for court costs and a fine of $500 at the rate of $50 monthly; (3) permitting a field officer to visit him at his home or elsewhere; (4) paying the MDOC $50 monthly until discharged from supervision; and (5) reporting to the MDOC. The MDOC released Thayer on June 16, 2016.

¶3.     Richard Brooks, an MDOC field officer, filed an affidavit on February 6, 2018, stating that Thayer violated the following conditions of his PRS: (1) failing to report to the MDOC since August 10, 2016; (2) failing to permit a field officer to visit his home or elsewhere since August 2016; (3) failing to pay the MDOC monthly fee since August 16, 2016 (owing MDOC $2,355); and (4) failing to attend a rehabilitation program in September 2016 after failing a drug test on August 3, 2016. After obtaining an arrest warrant, Brooks arrested Thayer that same day.

¶4. On November 27, 2018, Thayer signed a waiver, which stated that he voluntarily waived and relinquished his right to an informal preliminary probation revocation hearing with the MDOC. On November 28, 2018, the State filed a petition to revoke Thayer's PRS and impose his suspended sentence, citing the same violations from the MDOC's affidavit and arrest warrant.

¶5. After a revocation hearing, the circuit court revoked Thayer's PRS on January 15, 2019, finding that Thayer violated five conditions of his PRS: (1) failure to report to the MDOC; (2) failure to pay the MDOC; (3) failure to pay court costs;[1] (4) failure to permit the field officer to visit his house or elsewhere; and (5) failure to attend and complete special programs and counseling. The circuit court revoked Thayer's remaining twenty-year suspended sentence and ordered him to serve five years in the custody of the MDOC, with fifteen years suspended. The circuit court also ordered Thayer to be placed on PRS for five years after his release pursuant to Mississippi Code Annotated section 47-7-34 (Rev. 2015).[2]

¶6. Thayer filed a "petition to correct the revoked PRS" on February 3, 2020, asserting that the circuit court erred in sentencing him to serve five years in the custody of the MDOC. Thayer argued that he should have been sentenced to a maximum of ninety days and housed

---

[1] The State did not allege that Thayer failed to pay his court costs. Although the revocation hearing transcript was not included in the record, the circuit court seemingly found that Thayer failed to pay both the MDOC and the circuit court as required.

[2] "Failure to successfully abide by the terms and conditions shall be grounds to terminate the period of post-release supervision and to recommit the defendant to the correctional facility from which he was previously released." Miss. Code Ann. § 47-7-34(2).

at a technical-violation center (TVC) because it was his first technical violation. The circuit court denied Thayer's motion on March 16, 2020, finding that Thayer violated the terms of his PRS by failing to report to the MDOC for over two years. Therefore, the circuit court stated that it was within its discretion to revoke Thayer's probation and impose any or all of the suspended sentence.

¶7. On April 23, 2020,[3] Thayer appealed the denial of his PCR motion, raising the following issues: (1) whether the circuit court erred in sentencing him to serve five years in the custody of the MDOC; (2) whether the circuit court erred in denying his request for a court-appointed attorney; and (3) whether the circuit court erred in revoking his PRS when he did not commit a felony. Finding no error, we affirm the circuit court's ruling.

**Standard of Review**

¶8. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if the trial court abused its discretion and the decision is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Lawrence v. State*, 293 So. 3d 848, 850 (¶6) (Miss. Ct. App. 2019).

**Discussion**

---

[3] Because Thayer untimely filed a notice of appeal, the Mississippi Supreme Court Clerk requested that he show cause, within fourteen days of the request, as to why his appeal should not be dismissed. Thayer's show-cause response failed to explain the untimeliness of his appeal. Nevertheless, this Court noted that his certificate of service was timely dated April 14, 2020. Because Thayer was incarcerated and the State had not objected to the timeliness of the appeal, this Court found that Thayer's appeal could proceed.

4

¶9. Thayer failed to cite to the record and failed to cite any legal authority to support his arguments. "[I]t . . . is the duty of the appellant to provide authority in support of an assignment of error." *Herrin v. Perkins*, 282 So. 3d 727, 732-33 (¶21) (Miss. Ct. App. 2019). "Failure to cite legal authority in support of an issue is a procedural bar on appeal." *Id*. at 733 (¶21). Notwithstanding the procedural bar, we will address each of Thayer's issues.

### I. Whether the circuit court erred in sentencing Thayer to serve five years in the custody of the MDOC.

¶10. Thayer argues that the circuit court erred in sentencing him to serve five years in the custody of the MDOC because it was his first revocation. Specifically, Thayer argues that the court should have used language from Mississippi House Bill 585, *infra*, in determining his sentencing. Additionally, Thayer argues that the maximum sentence that he should have received was 120 days in a TVC or a restitution center. We find that this issue is without merit.

¶11. Mississippi's Probation and Parole Law was amended in 2014, and effective July 1, 2014, established new technical-violation procedures and centers in the MDOC. 2014 Miss. Laws ch. 457, §§ 47, 58 (H.B. 585); *Hobson v. State*, 230 So. 3d 1096, 1098 (¶8) (Miss. Ct. App. 2017). Mississippi Code Annotated section 47-7-2(q) (Rev. 2015) defines a "technical violation" as "an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer." Prior to 2018, Mississippi Code Annotated section 47-7-37 provided:

If the court revokes probation for a technical violation, the court shall impose

5

a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the court may impose up to the remainder of the suspended portion of the sentence.

Miss. Code Ann. § 47-7-37(5) (Rev. 2015). Therefore, upon revocation, a defendant's sentence and place of imprisonment depended on the number of technical violations. *Knight v. State*, 301 So. 3d 50, 54 (¶9) (Miss. Ct. App. 2020). One violation warranted ninety days of imprisonment, with the sentence increasing for each additional violation. *Id*.

¶12. But Mississippi Code Annotated section 47-7-37 was revised in 2018 to make the length of a defendant's sentence depend on whether it was the defendant's first, second, or third revocation. *Knight*, 301 So. 3d at 54 (¶9). Mississippi Code Annotated section 47-7-37(5)(a) (Supp. 2018) now provides:

If the court revokes probation for *one or more technical violations*, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation. For the third revocation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent revocation, the court may impose up to the remainder of the suspended portion of the sentence.

(Emphasis added).[4] With this change, a defendant could receive a ninety-day sentence, no matter how many technical violations, if it was his first revocation.

¶13. However, both prior to 2018 and thereafter, a court could impose any or all of a defendant's prior sentence if he absconded. Mississippi Code Annotated section 47-7-37.1 (Rev. 2015), which became effective April 20, 2015, states the following:

> Notwithstanding any other provision of law to the contrary, if a court finds by a preponderance of the evidence, that a probationer or a person under post-release supervision has committed a felony or *absconded,* the court may revoke his probation and impose any or all of the sentence. *For purposes of this section, "absconding from supervision" means the failure of a probationer to report to his supervising officer for six (6) or more consecutive months*.

(Emphasis added).

¶14. Here, while Thayer argues that the 2014 Mississippi House Bill's language should have been used in determining his sentence, he ignores the impact of Mississippi Code Annotated section 47-7-37.1 in his case. According to the 2018 revised version of section 47-7-37, had Thayer not failed to report and was subject to his first revocation, he could have been sentenced to ninety days' imprisonment in either a technical-violation center or a restitution center. But the circuit court found that Thayer had failed to report to his supervising officer since August 10, 2016, which was a period exceeding two years from the

---

[4] "With the 2018 revisions, the number of individual technical violations does not determine the length or where the imprisonment will be served. Rather, with the 2018 revisions, the length and manner of imprisonment for technical violations depends instead upon whether or not this is the defendant's first revocation vers[u]s the second, third or fourth." *Knight,* 301 So. 3d at 54 (¶9).

7

date of his arrest. Thus, Thayer absconded from supervision. Thayer's failure to report to his supervising officer for over six months triggered section 47-7-37.1, as the statute states. Specifically, Thayer's failure to report for over two years supported the court's revocation and imposition of his prior sentence.

¶15. Furthermore, "[u]nder Mississippi law, probation may be revoked upon a showing that the defendant more likely than not violated the terms of probation." *Gray v. State*, 269 So. 3d 331, 337 (¶21) (Miss. Ct. App. 2018) (quoting *Smith v. State*, 196 So. 3d 986, 996 (¶30) (Miss. Ct. App. 2015)). In the case at bar, because Thayer failed to provide a transcript of the revocation hearing, the record before us is limited. But Thayer did not deny or claim that he had not failed to report to his supervising officer for at least six consecutive months in his PCR motion or on appeal. Thayer only argues that his sentence is improper. Therefore, the circuit court did not err in sentencing Thayer to serve five years of incarceration.

**II. Whether the circuit court erred in denying Thayer's request for a court-appointed attorney.**

¶16. Thayer argues that the circuit court did not afford him due process by denying his request for court-appointed counsel. We disagree.

¶17. "It is well established, under our precedent, that a probationer is not always entitled to counsel at a revocation hearing." *Knight*, 301 So. 3d at 53 (¶5) (quoting *Hall v. State*, 189 So. 3d 631, 635 (¶13) (Miss. Ct. App. 2014)). "The question of whether a probationer is entitled to appointed counsel must be answered on a case-by-case-basis." *Id*. "[W]hen the issues relevant to the hearing are complex or difficult to develop, then the court should

8

appoint counsel for the defendant." *Peterson v. State*, 294 So. 3d 104, 108 (¶14) (Miss. Ct. App. 2020) (quoting *Smith v. State*, 94 So. 3d 335, 341 (¶18) (Miss. Ct. App. 2011)). Here, the issues were not complex or difficult to develop. The State filed a petition to revoke Thayer's PRS based on violations of his PRS, which the record indicates Thayer never denied committing. After a revocation hearing, the circuit court found that Thayer violated five conditions of his PRS. Further, the record does not support Thayer's assertion that he asked the circuit court for counsel and was denied. Therefore, this issue is without merit.

### III. Whether the circuit court erred in revoking Thayer's PRS when he did not commit a felony.

¶18. Thayer asserts that the circuit court erred in revoking his PRS because he did not commit a felony. This issue is without merit.

¶19. "At any time during the period of probation, the court . . . may issue a warrant for violating any of the conditions of probation or suspension of a sentence and cause the probationer to be arrested." Miss. Code Ann. § 47-7-37(2). "Mississippi law is clear that a probationer may have his probation revoked for any violation of the terms and conditions of his probation[.]" *Hall v. State*, 189 So. 3d 631, 636 (¶15) (Miss. Ct. App. 2014). "[A] probationer does not [even] have to be convicted of a crime before probation can be revoked." *Roney v. State*, 294 So. 3d 1268, 1272 (¶12) (Miss. Ct. App. 2020) (citing *Younger v. State*, 749 So. 2d 219, 222 (¶13) (Miss. Ct. App. 1999)).

¶20. Here, Thayer did not have to have committed a felony for his PRS to be revoked. On the contrary, Thayer only had to violate the terms and conditions of his PRS to warrant

9

revocation. Thayer violated the terms of his PRS conditions by failing to report to the MDOC, failing to pay the MDOC, failing to pay court costs, failing to permit a field officer to visit his house or elsewhere, and failing to attend and complete special programs and counseling. Because Thayer did not have to have committed a felony to have his PRS revoked, the circuit court did not err.

## Conclusion

¶21. Finding that Thayer's issues are both procedurally barred and without merit, we affirm the circuit court's ruling.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**